[940 NYS2d 34]

In the Matter of AMY L. NUSSBAUM GELL (Admitted as AMY LAUREN NUSSBAUM), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, February 28, 2012

**APPEARANCES OF COUNSEL**

*Jorge Dopico, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Naomi F. Goldstein* of counsel), for petitioner.

*Amy L. Nussbaum Gell*, respondent pro se.

**OPINION OF THE COURT**

Per Curiam.

Respondent Amy L. Nussbaum Gell was admitted to the practice of law in the State of New York by the First Judicial Department on April 16, 1987 under the name Amy Lauren Nussbaum. At all relevant times respondent maintained an office for the practice of law within the First Judicial Department.

The Departmental Disciplinary Committee now seeks an order, pursuant to 22 NYCRR 603.3, imposing reciprocal discipline on respondent predicated on an order of the United States Court of Appeals for the Second Circuit publicly reprimanding her, or in the alternative, sanctioning respondent as this Court deems appropriate.

By order filed in August 2007, the Second Circuit referred respondent to its Committee on Admissions and Grievances (CAG) to investigate and report on whether she should be subject to discipline or other corrective measures. The order was based on the dismissal of 28 petitions for review of determinations of the Board of Immigration Appeals, for which respondent was counsel of record. The petitions were dismissed for failure to comply with the court's scheduling orders. The order was also based on the dismissal on default of four other cases in which respondent accepted "primary responsibility," although her name did not appear as the attorney of record.

Following submission of her written response to the court's referral order, four days of hearings were conducted in 2008, at which respondent, then represented by counsel, testified and submitted additional material. Respondent conceded that between December 2005 and August 2007, she defaulted on 28 of 41 petitions for review she filed in the Second Circuit and four petitions filed in the Third Circuit for failing to comply with scheduling orders. However, respondent argued that her conduct did not prejudice any clients and that, indeed, some dismissed appeals were reinstated and other defaults were part of her strategy to gain time to pursue other, more advantageous forms of relief. Respondent further testified that in her experience, the court liberally reopened cases that were dismissed for noncompliance with scheduling orders and it was not until she received the referral order from the CAG that she realized the court was critical of repeated failure to comply with those

orders. Although not mentioned in the original referral order, respondent addressed the fact that she had filed at least 19 of the defaulted petitions prior to being admitted in the Second Circuit on March 3, 2006. Respondent admitted that she did not research whether she needed to be admitted for purposes of filing petitions for review, and testified that she relied on information conveyed by an associate in her firm, who had been advised by a court employee that, pursuant to the court rules, an attorney litigating before the court need not be admitted to the bar of the Second Circuit unless she intended to orally argue before the court.

In May 2009, the CAG filed a report finding respondent guilty by clear and convincing evidence of misconduct, and recommending a public reprimand and that she comply with certain reporting requirements. The CAG found that respondent had intentionally failed to comply with scheduling orders, resulting in the dismissal of a significant amount of cases, and that she practiced before the Second Circuit when she was not admitted to the court. Such conduct was found by the CAG to constitute neglect in violation of Code of Professional Responsibility DR 6-101 (a) (3) (22 NYCRR 1200.30 [a] [3]) and was "unbecoming a member of the bar" (Fed Rules App Pro rule 46 [c]), in violation of Federal Rules of Appellate Procedure rule 38. With respect to the default dismissals, the CAG noted respondent's testimony that she had made a strategic decision to default, believing that it was in the best interests of her clients. The CAG concluded that it appeared that respondent was now "committed to strict compliance with scheduling orders by implementing law office changes."

The CAG found that there were both mitigating and aggravating factors to consider. In aggravation was the vulnerability of respondent's immigrant clients; her pattern of misconduct which was "heightened due to [the] intentional nature of the [default] strategy"; her commission of multiple offenses by filing petitions when she was not admitted to the court and then "systematically violating scheduling orders"; and that she was an experienced practitioner with more than 20 years of experience, who should have recognized and addressed her misconduct. Additionally, respondent had received two prior admonitions issued by the Departmental Disciplinary Committee. In 2004, respondent was personally admonished for missing a hearing, resulting in a deportation order for her client, intentionally failing to move to reopen the hearing, and failing to communicate

with her client as to her strategy to delay moving to reopen. In 2006, respondent's firm was admonished for not filing a brief in the Second Circuit for which respondent accepted responsibility since she had supervisory responsibility for the case.

In support of mitigation, the CAG noted that respondent expressed a genuine commitment to her clients' best interests, including often working for clients who did not pay their fees and for nonresponsive clients, evidencing the absence of a dishonest or selfish motive; that she testified about certain medical issues that arose during the time of the first admonition; that she was forthcoming and cooperative with the CAG's investigation; that she expressed credible remorse for her misconduct; that she had taken good faith steps to prevent any recurrences by significantly limiting her caseload and committing to a diligent monitoring of court deadlines; that she appears to be a committed practitioner who provided quality work notwithstanding challenging situations; and that she appears to be well respected in the legal immigration community, as evidenced by her having worked for the Lawyers Committee for Human Rights and her having acted as the chairperson of the Federal Bar Association's immigration law committee.

While respondent also argued that her conduct did not prejudice any clients and that, indeed, some dismissed appeals were reinstated and other defaults were intended to benefit her clients, the CAG determined that "the level of prejudice to clients does not excuse [respondent's] disregard of court orders and the resulting burden on the Court and its staff." Under the circumstances, the CAG recommended that respondent receive a public reprimand and be required to adhere to certain reporting requirements in connection with her practice in any federal court in the Second Circuit, or in any federal administrative agency whose action is subject to the Second Circuit's review.

The Second Circuit adopted the CAG report, including its recommendation of a public reprimand and certain status report requirements, rejecting respondent's request for private discipline because of "the magnitude of her misconduct and, to a lesser degree, her continued failure to abide by this Court's scheduling orders." The court pointed out that since her referral to the Grievance Committee, respondent had missed briefing deadlines in several cases, including after the hearing before the CAG. The court noted that while respondent had expressed her belief that no defaults had occurred since she was referred to the Grievance Committee, the court acknowledged that her

testimony suggested a "possible misunderstanding of what constitutes a default," which occurs when a required document is not filed by a court-ordered deadline, versus a "dismissal" of a case.

The court determined that respondent had not committed substantial misconduct by filing documents without first being admitted to the court's bar or having an application pending, because she had relied on advice which it was not unreasonable to believe was accurate, and because no one was prejudiced by the failure to be admitted.

Regarding respondent's disciplinary history, the court agreed with respondent that since one of the First Department admonitions was covered by the disciplinary referral order, it should not be treated as both misconduct directly redressable in this proceeding and an independent aggravating factor. In addition, although the court agreed with the CAG's finding that respondent's clients' vulnerability was an aggravating factor, the court accorded it less weight because there was no evidence that respondent intentionally took advantage of them or that prejudice resulted from their vulnerability.

In a proceeding seeking reciprocal discipline pursuant to 22 NYCRR 603.3, respondent is precluded from raising any defenses except: (1) lack of notice or opportunity to be heard in the foreign jurisdiction constituting a deprivation of due process; (2) an infirmity of proof establishing the misconduct presented to the foreign jurisdiction; or (3) that the misconduct for which the attorney was disciplined in the foreign jurisdiction does not constitute misconduct in this State.

Respondent does not oppose this reciprocal proceeding nor does she assert any of the above defenses. Rather, she asks the Court to deviate from its general principle of imposing the same discipline as the original jurisdiction and requests that the sanction be limited to a private reprimand. Respondent asserts the same factors she raised before the Second Circuit when she requested that court impose private discipline, including her remorse and full cooperation with the federal grievance committee, her dedication over 23 years of practice to her clients and the lack of self-gain, the improvements she made to her office to prevent future mistakes, her well-intentioned belief that she was helping her clients by using the default strategy and the extensive time she has spent promoting and assisting the immigration bar including by recently helping to educate her colleagues to avoid the problem she had. She further argues that a

republication of the Second Circuit public reprimand in an order of censure would have a devastating impact upon her ability to engage in the bar activities that she currently participates in and would have a de minimis benefit to the public. Finally, respondent states that a public decision is not necessary to deter her from future misconduct.

The petition is granted because it is undisputed that respondent has no defenses under 22 NYCRR 603.3 (c). Respondent was provided with sufficient notice and an opportunity to be heard before the Second Circuit, and indeed took the opportunity to testify and submit various submissions. Additionally, there is no infirmity of proof defense since the findings of misconduct were supported by respondent's admissions in her submissions and testimony. Lastly, respondent was sanctioned in the Second Circuit under the New York Lawyer's Code of Professional Responsibility (DR 6-101 [a] [3] [neglect of a legal matter]), which, at the time, also governed the conduct of New York attorneys.

Regarding an appropriate sanction to impose, generally, this Court accords significant weight to the discipline imposed by the jurisdiction where the charges were initially filed (see Matter of Jarblum, 51 AD3d 68, 71 [2008]; Matter of Hatton, 44 AD3d 49 [2007]). In addition, the Second Circuit's imposition of a public reprimand is in accord with cases in this Department where attorneys were censured for neglecting client matters, including immigration matters, and where there was mitigation and a disciplinary history (see e.g. Matter of Salomon, 78 AD3d 115 [2010]; Matter of Weiner, 10 AD3d 92 [2004]; Matter of Lenoir, 287 AD2d 243 [2001]).

Finally, based upon the totality of the circumstances, it is submitted that respondent has failed to provide sufficiently compelling reasons to grant her request to impose private discipline instead of public.

Accordingly, the Committee's petition for reciprocal discipline should be granted, and respondent is censured.

Tom, J.P., Mazzarelli, Acosta, Renwick and Freedman, JJ., concur.

Respondent publicly censured.