Matter of Liotti (2024 NY Slip Op 01310)

Matter of Liotti

2024 NY Slip Op 01310

Decided on March 13, 2024

Appellate Division, Second Department

Per Curiam.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on March 13, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
FRANCESCA E. CONNOLLY
VALERIE BRATHWAITE NELSON
CHERYL E. CHAMBERS
ROBERT J. MILLER, JJ.

2021-01409

[*1]In the Matter of Thomas F. Liotti, admitted as Thomas Francis Robert Liotti, an attorney and counselor-at-law. Grievance Committee for the Tenth Judicial District, petitioner; Thomas F. Liotti, respondent. (Attorney Registration No. 1006485)

DISCIPLINARY PROCEEDING instituted by the Grievance Committee for the Tenth Judicial District. The respondent was admitted to the Bar at a term of the Appellate Division of the Supreme Court in the Second Judicial Department on September 7, 1977, under the name Thomas Francis Robert Liotti.

Catherine A. Sheridan, Hauppauge, NY (Michael Fuchs of counsel), for petitioner.
Michael S. Ross, New York, NY, for respondent.

PER CURIAM.

OPINION & ORDER
The Grievance Committee for the Tenth Judicial District served the respondent with
a notice of petition dated February 23, 2021, and a verified petition dated February 16, 2021, containing four charges of professional misconduct. The respondent served and filed a verified answer to the petition dated April 1, 2021, admitting to nearly all of the factual allegations contained in the verified petition but denying the conclusions of law contained therein. The Grievance Committee served and filed a statement of disputed and undisputed facts dated April 20, 2021, with which the respondent concurred. By decision and order on application dated February 17, 2022, this Court referred the matter to John J. Halloran, Jr., as Special Referee, to hear and report. A pre-hearing conference was held on March 18, 2022, at which the petition was amended by agreement of the parties. Subsequently, by stipulation signed by the parties on May 17, 2022, and May 18, 2022, charge one of the verified petition was withdrawn and the petition was further amended. Pursuant to the stipulation, the respondent admitted to all of the factual specifications contained in the petition, as amended, and continued to deny all conclusions of law in the remaining charges. A hearing was conducted on May 23, 2022. In a report dated September 8, 2022, the Special Referee sustained all three remaining charges in the petition. The Grievance Committee now moves to confirm the Special Referee's report and to impose such discipline upon the respondent as this Court deems just and proper. The respondent submits an affirmation in support of the Grievance Committee's motion and asks for a sanction no greater than a public censure.
The charges emanate from a common set of facts. The respondent represented the
defendant in a matrimonial and custody matter in Supreme Court, Nassau County, before the Honorable Joseph H. Lorintz (Anonymous 2017-1 v Anonymous 2017-2, Index No. 202477-2017). The plaintiff in that matter was represented by Stephen Gassman, and Mark A. Green (hereinafter the AFC) represented the parties' two children. On April 2, 2018, in an attempt to thwart a perceived plan by the plaintiff and his private investigator to engineer the defendant's arrest, the respondent transported the defendant and her two children, in the respondent's car, to the house of the defendant's friend. Thereafter, the plaintiff moved by order to show cause for the respondent's [*2]disqualification from representing the defendant, based on allegations that the respondent improperly spoke to the children about the subject of the representation while the respondent was transporting them, outside the presence of the AFC, their counsel, and without the AFC's consent. Following a six-day hearing, by order dated October 23, 2018 (hereinafter the October 23, 2018 order), the respondent was disqualified from representing the defendant in the matrimonial and custody matter.
As charged in the petition, in an affirmation dated April 25, 2018, in opposition to
the plaintiff's order to show cause seeking to disqualify the respondent from representing the defendant, the respondent stated, among other things, that:
i. Gassman and the AFC were "looking to curry the favor of the [Supreme] Court . . . They have each, as is their unbridled custom and practice, contributed to this [c]ourt's campaign largesse."
ii. Gassman, the AFC, and the court "would like nothing better than to have me disqualified from this case because in that way they can continue their charade of justice."
iii. Gassman and the AFC are "neophytes."
In a sur-reply affirmation, dated May 18, 2018, submitted in response to the same order to show cause, the respondent stated that the AFC's "naivete, inexperience and prejudice are shown in his Quixotic affirmation which more than tilting at windmills is a reducto ad absurdum."
Following the October 23, 2018 order disqualifying the respondent, the defendant appealed. As charged in the petition, in his appellate brief, the respondent stated, inter alia, the following:
i. The disqualification hearing was a "travesty of justice" that "continued with the jump starting of a hoax; a tiddly winks of a disqualification hearing."
ii. The disqualification hearing was "contrived by [the plaintiff], his lawyers and the AFC acting in concert with a neophyte Justice and all intimidated by the effective, zealous advocacy of appellant's counsel."
iii. Justice Lorintz "was clearly over his head having no idea about why a disqualification hearing should be held or how to hold one. He caved in to the supercilious demands of [Gassman] and the AFC."
iv. The disqualification hearing "was a ruse and a sham cooked up by [the plaintiff's counsel] and the AFC acting in concert. The [Supreme] Court had no idea what it was doing or how to conduct a so-called disqualification hearing."
v. The "[c]ourt could not determine even the most rudimentary, fundamental issues."
vi. Justice Lorintz was "so transparently deferential to [ ] Gassman throughout this case that he appeared to be more like his apprentice instead of a fair jurist."
vii. "Had the court been interested in dispassionate truth, it would have stopped the proceedings in order to hold a hearing within the hearing to determine the full nature of the lies which were exposed before it."
viii. "[G]iven [the AFC's] bias against [the defendant] on every legal issue, he and the Justice were of a mind to tilt the sentiments of the children against [the respondent] and [the defendant]."
ix. Justice Lorintz did not act in the best interests of the children. "Instead, he acted in his own best interests and those of [the plaintiff] and his counsel."
x. The children were "ostensibly but ineffectively represented by a flaccid AFC who worked hand and glove with [the plaintiff's] counsel throughout this case and whose fees are being paid by [the plaintiff]."
xi. The court's errors were "muddled by layers upon layers of corruption, influence peddling, legal bribery, perjury and subornation of it."
xii. Justice Lorintz was a "neophyte jurist trying to demonstrate his toughness" and "striving to prove [*3]his machismo" by disqualifying the respondent.
The respondent appeared pro se in the matter of Liotti v D'Amato, Supreme Court,
Nassau County, Index No. 614680/2019. In a May 28, 2019 affidavit, as charged in the petition, the respondent stated, among other things:
i. Justice Lorintz was a "new jurist" who was "trying to impress everyone with his legal acumen which was unfortunately nearly nonexistent."
ii. Justice Lorintz "was conducting a charade of an actual legal proceeding, rather than a real one. A law school mock trial would have had more teeth to it."
iii. "The subtle nuances of trial practice were beyond the ken of Justice Lorintz's understanding. Had he experience as a trial lawyer instead of his judgeship being the product of a political cross endorsement, he might have had more cognition of these issues."
As a result of these statements, the petition, as amended, charged the respondent with engaging in undignified or discourteous conduct in appearing before a tribunal (charge two), engaging in conduct that is prejudicial to the administration of justice (charge three), and engaging in conduct that adversely reflects on his fitness as a lawyer (charge four), in violation of rules 3.3(f)(2) and 8.4(d) and (h), respectively, of the Rules of Professional Conduct (22 NYCRR 1200.0).
Through his answer and his hearing testimony, the respondent admitted that he made
each of the foregoing statements, but explained that he did not believe that the statements violated the Rules of Professional Conduct because, inter alia, he made the statements in good faith, he believed that the statements were true and that he was furthering his client's interests in making them, and the statements were not profane. Although the respondent believed at the time that he wrote the statements that they were appropriate, he acknowledged that the statements were "strong" and that he "would be more restrained today." At the same time, the respondent testified that he still believed it was proper to claim that the Supreme Court had no idea what it was doing and could not determine even the most rudimentary fundamental issues.
At the hearing, the respondent explained he believed that Justice Lorintz's rulings were politically motivated, based on, inter alia, campaign contributions from Gassman and the AFC, and that the disqualification hearing lacked a proper legal basis and therefore violated the respondent's Due Process rights. In the respondent's opinion, Justice Lorintz, Gassman, and the AFC were inexperienced and incompetent, and had improperly colluded against the respondent and his client by, among other things, the two attorneys joining each others' motions, and Justice Lorintz repeatedly ruling in their favor. The respondent admitted that Justice Lorintz's alleged actions in accepting campaign contributions without disclosing them to the parties or recusing himself was legal, that the respondent did not actually know how long the AFC had been practicing law, that Justice Lorintz had been an attorney for more than 20 years before becoming a Justice, and that a Justice repeatedly ruling in a party's favor does not necessarily indicate impropriety.
In his report sustaining the three charges against the respondent, the Special Referee
found, inter alia, that rule 3.3(f)(2) of the Rules of Professional Conduct does not require a showing that a statement is false. The Special Referee further found the respondent to be "highly credible" and noted extensive mitigation, including, among other things, the respondent's "long and distinguished career," with a focus on pro bono work, his strong showing of good character, his demonstrated genuine remorse, and the lack of material prejudice to the respondent's client or other parties.
Findings and Conclusion
In view of the evidence adduced at the hearing and the respondent's admissions, we find that the Special Referee properly sustained all three charges. Accordingly, the Grievance Committee's motion to confirm the Special Referee's report is granted. In determining an appropriate measure of discipline, we have considered in mitigation, inter alia, evidence of the respondent's good character, his stated commitment to using more restrained language in the future, and his long career, reflecting a commitment to public service in many forms, including serving for over 30 years as a Village Justice for the Village of Westbury. In aggravation, we have considered the respondent's extensive disciplinary history, consisting of a censure (see Matter of Liotti, 111 AD3d 98), three prior Letters of Caution, four admonitions, and a public admonition from the United States Court of Appeals for the Fourth Circuit (see In re Liotti, 667 F3d 419 [4th Cir]). One of the admonitions and the censure, which was a reciprocal discipline based on the Fourth Circuit's public [*4]admonition, involved similar misconduct as this present case. We also have considered the evidence the respondent submitted of his extensive trial and appellate experience, and his authoring of over 100 articles and several books on legal subjects, including, inter alia, the ethical practice of lawyers in appearing before the courts. In so doing, we conclude that the respondent was aware of the requirements placed on lawyers to conduct themselves with courtesy and dignity; however, he chose
to depart from these standards in the matters discussed herein.
Under the totality of the circumstances, we find that the respondent's conduct warrants his suspension from the practice of law for a period of six months.
DILLON, J.P., CONNOLLY, BRATHWAITE NELSON, CHAMBERS and MILLER, JJ., concur.
ORDERED that the Grievance Committee's motion to confirm the Special Referee's report is granted; and it is further,
ORDERED that the respondent, Thomas F. Liotti, admitted as Thomas Francis Robert Liotti, is suspended from the practice of law for a period of six months, commencing April 12, 2024, and continuing until further order of this Court. The respondent shall not apply for reinstatement earlier than September 12, 2024. In such application (see 22 NYCRR 1240.16), the respondent shall furnish satisfactory proof that during the period of suspension, he (1) refrained from practicing or attempting to practice law, (2) fully complied with this opinion and order and with the terms and provisions of the rules governing the conduct of disbarred or suspended attorneys (see id. § 1240.15), and (3) otherwise properly conducted himself; and it is further,
ORDERED that pursuant to Judiciary Law § 90, during the period of suspension and until the further order of this Court, the respondent, Thomas F. Liotti, admitted as Thomas Francis Robert Liotti, shall desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,
ORDERED that if the respondent, Thomas F. Liotti, admitted as Thomas Francis Robert Liotti, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 1240.15(f).
ENTER:
Darrell M. Joseph
Acting Clerk of the Court